**Gregory W. McKAY, Plaintiff–Counter–Claimant–Appellant,**

v.

**UNITED STATES of America, Defendant–Counter–Claimant–Appellee.**

No. 90–55842.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1991.

Decided Feb. 24, 1992.

Gregory W. McKay, pro se.

Gary D. Gray, Gary R. Allen, Tax Div., Dept. of Justice, Washington, D.C., for defendant-counter-claimant-appellee.

Before SNEED, BEEZER and TROTT, Circuit Judges.

SNEED, Circuit Judge:

This appeal concerns a series of events that began twenty years ago. Pro se appellant Gregory W. McKay seeks to overturn a judgment of $207,969.52 for back taxes, interest, and penalties. This judgment has its source in the appellant's federal personal income tax returns for the years 1972 and 1973. Appellant attacks the judgment on two grounds: (1) that the district court erred by finding that appellant underpaid his taxes for the years in question, and (2) that the penalties associated with the tax underpayments which were included in the judgment ($58,423) were discharged in appellant's bankruptcy, and should not have been included in the final judgment. The first has no merit, but the second does. Therefore, we affirm as to the first ground and reverse as to the second.

## I.

### FACTS AND PROCEEDINGS BELOW

Commencing in 1971, appellant invested in and operated a number of real estate partnerships and companies. He timely filed and paid his 1971, 1972, and 1973 taxes. Thereafter, appellant filed refund claims for taxes paid in those years. These claims were based on an alleged net operating loss deduction incurred in 1974, and were consistent with regulations then in effect. The Internal Revenue Service made no immediate response to the refund requests. This suit for the claimed refunds was filed on August 16, 1976.

The Service was active, however. Prior to this refund suit, the Service began an investigation pertaining to the 1972 and 1973 returns. The investigation included an examination of appellant's business enterprises, focusing principally on McKay Industries and Innovest Properties, Inc. This investigation led to an indictment of the appellant on April 13, 1979, for three counts under I.R.C. § 7206 of knowingly and willfully subscribing false tax returns for his 1972 and 1973 personal income, as well as for the 1972 corporate income for McKay Industries. On July 11, 1979, appellant was found guilty of all three counts.

Furthermore, the IRS assessed additional income taxes for 1972 and 1973, and sent a notice of deficiency of $210,147.17 to appellant on April 7, 1977. The figure reflected the tax liability, interest, and civil fraud penalties. Included were items of income and expenses that formed the basis of appellant's criminal conviction, as well as other items not charged in the criminal indictment. On March 25, 1981, the United States filed a counterclaim in the refund suit that is the subject of this appeal seeking to reduce the total assessment to judgment. Thus, what had begun as a refund suit became a "deficiency suit."

The case remained on an "angle of repose." On November 4, 1985, appellant challenged the 1977 assessment in the Tax Court on grounds of a failure to receive timely notice. This led to a stay of this refund suit, a stay which was continued while appellant appealed the Tax Court's dismissal of his new challenge. In 1989 we affirmed that dismissal. *See McKay v.*

*Commissioner,* 886 F.2d 1237 (9th Cir. 1989). The refund case remained inactive.

In the meantime, appellant had begun personal bankruptcy proceedings. He then advised the district court that he would prefer his tax liability to be determined by the bankruptcy court, and to further that end he sought dismissal of his own refund claims, with prejudice, as well as dismissal of the government's counterclaim which sought to reduce the 1977 assessment to judgment. The court, not surprisingly, dismissed the refund claims on October 1, 1986, but denied appellant's motion to dismiss the counterclaim. Slightly more than a year later, on October 27, 1987, appellant succeeded in obtaining a discharge in bankruptcy. Now armed with the discharge, he again moved the district court to dismiss the government's counterclaim as a discharged tax liability. The district court denied appellant's motion and ruled that, because appellant had filed fraudulent returns, the taxes were not subject to discharge.

Finally, on February 13, 1990—just shy of twenty years since appellant had filed the returns which form the basis of this dispute—this long inactive "refund" case proceeded to trial. Except for one minor fact issue, the district court held for the government. It entered judgment of $207,969.52, which included the base tax liability, interest, and civil fraud penalties. Appellant has timely appealed, and we write these words in 1992.

## II.

### JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291.

We will uphold the district court's factual findings unless they are clearly erroneous. *See Meridian Wood Products Co. v. United States,* 725 F.2d 1183, 1190 (9th Cir.1984). The question whether civil tax fraud penalties older than three years are discharged in bankruptcy is a pure question of law, which we review de novo.

## III.

### THE TAX LIABILITY

#### A. *Did the Service Prove Fraud?*

■ Subject to certain exceptions, tax debts incurred three years before the filing of a successful bankruptcy petition are discharged. One such exception is for taxes that were avoided by reason of fraud. 11 U.S.C. § 523(a)(1)(C). To establish this exception, the Service must prove a statutory civil fraud violation under I.R.C. § .6653(b). Appellant argues that the Service failed to establish its proof and that, as a consequence, there can be no tax liability because the taxes in question were incurred outside the three year period.

Appellant's argument fails. Although it is true that appellant's § 7206 criminal fraud conviction does not alone constitute proof of all the elements of § 6653(b) civil fraud, *see Considine v. United States,* 683 F.2d 1285, 1287 (9th Cir.1982), appellant clearly conceded a statutory violation of § 6653(b) during the trial proceedings. To shorten the trial and avoid a rehash of the facts supporting appellant's earlier criminal fraud conviction before the trial judge in this civil suit, appellant sought to present and rely only upon his various defenses to the charged tax liability. There was a price attached to this advantage, however. At the insistence of government counsel, the district court identified the appropriate code section and asked appellant to affirm that his fraud concession was "unqualified." This he did. Appellant cannot now claim that the government failed to prove what at trial he openly conceded.

#### B. *Were the District Court's Findings of Fact Clearly Erroneous?*

A tax assessment is presumptively accurate. The burden of disproving the assessment is on the taxpayer. *See Rockwell v. Commissioner,* 512 F.2d 882, 885 (9th Cir.) *cert. denied,* 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1977). The district court found that the taxpayer did not meet that burden. We review that finding under the clearly erroneous standard. *See Meridian,*

725 F.2d at 1190.[1] So reviewed, we hold that the district court did not err. A brief discussion of the contested items follows.

1. *Constructive Dividends.* In the 1977 assessment, appellant was charged with a number of constructive dividends from disallowed corporate deductions from appellant's business enterprises.[2] For example, the assessment alleged that appellant used corporate and partnership funds to improve his home, pay the salary of his domestic help, and finance travel, automobile, and restaurant expenses. At trial, appellant conceded the accuracy of the dollar amounts charged. He argued, however, that many of the items were valid business expenses. Appellant said he used his home and car for business purposes and offered a lengthy "log" of entertainment events which he asserted were business expenses.

The government put on the stand Roger Wing, who served as the comptroller and manager of accounting for Innovest, Inc. He testified that it was appellant's constant practice to use corporate funds for personal expenses, and that the books were "[c]ompletely and totally out of control."

The district court concluded that this testimony, when added to appellant's self-serving and imprecise statements and the absence of receipts for items appearing in the "log," rendered appellant's defenses "weak or nonexistent." We agree. We cannot say that the court's finding that appellant failed to meet his burden of proof was clearly erroneous.

2. *Offset Defenses.* The bulk of the government's assessment consisted of items which either were omitted from, or wrongly reported in, appellant's tax returns for the years in question. At trial, appellant conceded the dollar amounts of the misstated and unreported items. He argued, however, that any increase in income as a result of those amounts should be offset against various unreported loans allegedly he made to his business enterprises and also against a startling number of undiscovered accounting errors.[3]

Again, appellant offered little documentary evidence, other than a number of cancelled checks, to substantiate the existence of these loans or overpayments. He could not establish that these checks were loans; he simply produced checks, and testified as to their nature. "Financial statements" offered to support his position on accounting errors were discredited by Mr. Wing as "irrelevant" for tax purposes. Wing testified that they had not been audited and were not used in the preparation of the corporate returns. Moreover, Wing rebutted a number of appellant's specific allegations. He testified that the $40,000 disbursement was properly counted as salary and that the Grove partnership property sale did include the $160,000 note in its basis.

On appeal, appellant nonetheless blandly characterizes his evidence as "uncontroverted." This is not true. In fact, the government rebutted appellant's claims through both documentary evidence and the live testimony of Roger Wing. We remain confident that the court's findings

---

1. We recognize that the IRS must make an initial factual showing establishing unreported income before the presumption of correctness attaches to an assessment based on such income. *See Spatafore v. United States,* 752 F.2d 415, 418 (9th Cir.1985). However, there was no factual failing in this area because appellant conceded the amounts of unreported income charged in the assessment at trial. As applied to appellant's claims for deductions and offsets, the district court's application of the burden of proof was correct.

2. If a corporation cannot deduct a particular expense and the expense confers an economic gain, a benefit, or income to the taxpayer, the

expense should be treated as a constructive dividend. *See Meridian,* 725 F.2d at 1183.

3. A few examples will illustrate appellant's effort. Appellant claimed that (1) an $80,000 payment by him to Innovest Properties, Inc., was in actuality a return of a salary overpayment on which he mistakenly paid taxes, (2) a $40,000 disbursement made to him from McKay Industries was in actuality the repayment of an undocumented loan made by appellant to the company at an earlier date, and (3) partnership profits for Grove Company, another of appellant's business ventures, were overstated by a failure to include a $160,000 note in the basis of a property sale.

were not clearly erroneous. Appellant owes what the government says he owes in unpaid taxes. The district court so held and we agree.

## IV.

### THE TAX PENALTY LIABILITY: A CASE OF EXCESS NEGATIVES

■ We now turn to the more difficult part of this case. Appellant argues that the plain language of 11 U.S.C. § 523(a)(7)(B) provides a discharge of his civil fraud penalties levied in 1977. We agree. Section 523(a)(7)(B) of the Bankruptcy Code provides that a tax penalty "imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition" is discharged. 11 U.S.C. § 523(a)(7)(B). Appellant's argument would appear to be valid. There is more to the issue, however.

The government argues that the meaning of § 523(a)(7)(B) must be read in the light of the legislative history and structure of the entire subsection 523(a)(7). The government asserts that the words "imposed with respect to a transaction or event" in § 523(a)(7)(B) apply only to the very narrow class of tax penalties other than penalties imposed by reason of nondischargeable tax debts.

That interpretation appears reasonable; a penalty with respect to a nondischargeable tax debt should itself not be dischargeable. Intuitively, that makes sense. While some may have intended the statute to have this meaning, it does not say that. The section provides in relevant part:

> A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
>> (7) to the extent such a debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—
>>
>>> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

>>> (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;
>>
>> . . . .

11 U.S.C. § 523(a)(7).

Carefully parsed, the section initially makes nondischargeable a "debt that is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit." Withdrawn from this class, however, are any such fines, penalties, or forfeitures that are "compensation for actual pecuniary loss." These are dischargeable. The double negative, "does *not* discharge" and "*not* compensation for actual pecuniary loss," accomplishes this end.

Another group of penalties are withdrawn from the nondischargeable group. These appear in parts (A) and (B) of § 523(a)(7). Part (A) withdraws tax penalties attributable to taxes which are not nondischargeable. That is, part (A) makes dischargeable tax penalties attributable to dischargeable taxes. This follows because part (A) relates "to a tax of a kind *not* specified in paragraph (1) of this subsection." 11 U.S.C. § 523(a)(7)(A) (emphasis added). Those types specified in paragraph (1) are not dischargeable taxes. In relevant part "paragraph (1) of this subsection" makes not dischargeable "any debt" that is "for a tax ... with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C).

The other group of penalties withdrawn from the nondischargeable group is described in part (B). It is quite straightforward. It makes dischargeable any tax penalty "imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition." A penalty imposed on unpaid taxes accruing more than three years before the filing of the bankruptcy petition is dischargeable.

That describes the situation of the appellant. There is some evidence in the legislative history that Congress did not intend

this result.[4] We, like other circuits which have carefully considered this issue, have adhered to the language of the statute. *See In re Roberts,* 906 F.2d 1440 (10th Cir.1990); *In re Burns,* 887 F.2d 1541 (11th Cir.1989). Amendment, as opposed to interpretation, is for the Congress.

AFFIRMED IN PART AND RE-VERSED IN PART.

---

4. For instance, the Senate Judiciary Committee described an earlier version of § 523(a)(7) as follows:

> Paragraph (7) makes nondischargeable certain liabilities for penalties including tax penalties if the underlying tax with respect to which the penalty was imposed is also nondischargeable (sec. 523(a)(7)). These latter liabilities cover those which, but are penal in .nature, as distinct from so-called "pecuniary loss" penalties which, in the case of taxes, involve basically the collection of a tax under the label of a "penalty." This provision differs from the bill as introduced, which did not link the nondischarge of a tax penalty with the treatment of the underlying tax.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 79 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865.

Representative Edwards and Senator DeConcini also issued a joint oral report, ostensibly made in lieu of a formal conference committee report, which described the enacted version of § 523(a)(7):

> The House amendment also adopts the Senate amendment provision limiting the nondischargeability of punitive tax penalties, that is, penalties other than those which represent a collection of a principal amount of tax liability through the form of a "penalty." Under the House amendment, tax penalties which are basically punitive in nature are to be nondischargeable only if the penalty is computed by reference to a related tax liability which is nondischargeable or, if the amount of the penalty is not computed by reference to a tax liability, the transaction or event giving rise to the penalty occurred during the three-year period ending on the date of the petition.

124 Cong.Rec. 32350, 32417 (1978) (statement of Rep. Edwards); 124 Cong.Rec. 33989, 34016 (1978) (statement of Sen. DeConcini).