**In re Barbara June KISH, Debtor.**

**Barbara June Kish, Plaintiff,**

**v.**

**John J. Farmer, Jr., in his capacity as Attorney General of New Jersey and C. Richard Kamin, in his capacity as Director of the New Jersey Division of Motor Vehicles, Defendants.**

Bankruptcy No. 95–36624.
Adversary No. 96–3371.

United States Bankruptcy Court,
D. New Jersey.

Aug. 30, 1999.

See also 204 B.R. 122, 212 B.R. 808, and 221 B.R. 118.

Gail Chester, Esq., Middlesex County Legal Services Corp., Perth Amboy, NJ, for Debtor/Plaintiff.

Marc A. Krefetz, Esq., Deputy Attorney General, Trenton, NJ, for Defendants.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

The issues in this adversary proceeding are (1) whether the plaintiff debtor's motor vehicle surcharge debts are nondischargeable under Bankruptcy Code section 523(a)(7) or section 523(a)(1), and (2) if the debts are nondischargeable, whether the plaintiff is entitled to declaratory and injunctive relief against the defendants under the *Ex parte Young* doctrine prohibiting further collection efforts and discrimination because of nonpayment of the discharged debts. At the scheduled trial date of May 4, 1999 the parties presented a joint stipulation of facts and the court reserved decision. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I) and (O) and the court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151 and 157(a).

**275**

## FINDINGS OF FACT

The debtor filed a petition for relief under chapter 7 of title 11, United States Code (the "Bankruptcy Code" or "Code") on September 20, 1995. The court issued a discharge of all dischargeable debts on December 20, 1995 and sent a notice of discharge to all creditors, including the New Jersey Division of Motor Vehicles ("DMV"). The DMV had assessed prepetition surcharges and costs against the debtor of $6,050. for three separate motor vehicle violations and had suspended her license. In May, 1996 the DMV restored the debtor's license but sent a letter demanding payment of the surcharge debt with interest.

On August 30, 1996, after reopening her bankruptcy case upon order of this court, the debtor commenced this adversary proceeding against the DMV, the New Jersey Automobile Full Insurance Underwriting Association (the "JUA"), the New Jersey Market Transition Facility (the "MTF") and John J. Farmer, Jr.,[1] ("Farmer") the Attorney General of New Jersey, and C. Richard Kamin, ("Kamin") the Director of the DMV, in their official capacities. The debtor seeks a declaratory judgment that her motor vehicle surcharges, including interest and costs, were included in her chapter 7 discharge, a declaratory judgment that Kamin and Farmer violated the discharge injunction by pursuing collection post-discharge, and an injunction prohibiting any further collection efforts by the defendants. Additionally, the debtor seeks an injunction prohibiting Farmer from enforcing certain state surcharge laws, an injunction prohibiting defendants from revoking her driving privileges for nonpayment of the discharged debt, and a declaratory judgment that defendants are estopped from collecting the prepetition debt and that particular sections of New Jersey's surcharge statute are unconstitu-

---

1. In a letter dated June 11, 1999 Mr. Krefetz informed the court that John J. Farmer, Jr. ("Farmer") was appointed as the Attorney General of New Jersey. An order was en-
tered on August 16, 1999 substituting Farmer for Peter Verniero. This opinion refers throughout to the New Jersey Attorney General as "Farmer" to avoid confusion.

tional on the ground that they conflict with the Bankruptcy Code and therefore violate the Supremacy Clause.

The defendants responded to the debtor's complaint with a motion to dismiss for failure to state a claim upon which relief could be granted. Treating the defendants' motion as one for summary judgment, the court granted the defendants' motion, holding that the surcharge debt was nondischargeable, net of administrative expenses retained by the DMV, under section 523(a)(7). Accordingly, the court found the remaining counts moot. *Kish v. Verniero (In re Kish)*, 204 B.R. 122 (Bankr.D.N.J.1997)(hereinafter *"Kish I"*).

On appeal, the district court held that it was error to convert the defendants' motion to dismiss to a motion for summary judgment without affording the parties adequate notice and opportunity to submit materials in support of and opposition to the motion. Accordingly, the district court stated that on remand the bankruptcy court must afford the parties the opportunity to develop a record on the relevant issues. The district court also raised the issue of the DMV's Eleventh Amendment immunity sua sponte. Finding that the DMV is a state agency and a real party in interest, the district court concluded that the DMV was entitled to Eleventh Amendment protection. Therefore, the district court reversed this court's decision for lack of subject matter jurisdiction to the extent that the DMV's rights were implicated and remanded the case to this court to determine whether the JUA and the MTF were entitled to immunity under the Eleventh Amendment as arms of the state. The district court also remanded for consideration of whether defendants Farmer and Kamin were subject to suit in federal court

pursuant to the doctrine of Ex parte Young. *Kish v. Verniero (In re Kish)*, 212 B.R. 808 (D.N.J.1997)(hereinafter *"Kish II"*).

On remand this court determined whether the JUA and the MTF qualified for Eleventh Amendment protection under the Third Circuit's three-part test set forth in *Christy v. Pennsylvania Turnpike Commission*, 54 F.3d 1140, 1144 (3d Cir. 1995).[2] Finding persuasive the fact that a judgment against the JUA would be paid from the state treasury and the fact that the state exercises substantial control over the JUA, the court concluded that the JUA was an arm of the state entitled to Eleventh Amendment immunity. The court reached the opposite conclusion, however, with respect to the MTF. Finding that a judgment against the MTF would not likely be paid from the state treasury and noting that New Jersey treats the MTF as an independent entity, the court concluded that the MTF was not an arm of the state entitled to Eleventh Amendment immunity. *Kish v. Verniero (In re Kish)*, 221 B.R. 118 (Bankr.D.N.J.1998)(hereinafter *"Kish III"*).

Although the court held that the MTF was not entitled to Eleventh Amendment immunity, the court nevertheless dismissed the complaint against the MTF as well as the JUA, holding that neither entity was a creditor of the debtor. The court noted that the DMV is the entity which bills and collects the surcharges and which has the authority to suspend the debtor's license. Although the DMV was required by statute to turn the money over to the JUA and the MTF for a certain time period, those entities have no right to collect the surcharges from the debtor. *See*, N.J.

---

**2.** Under the *Christy* test, the court first considers whether payment of a judgment in the plaintiff's favor would come from the state. This question is answered by considering whether the agency has adequate funds to pay ·the judgment, whether the payment is actually made from the state treasury and whether the state has immunized itself from liability

on the agency's debts. Second, the court examines the agency's status under state law, including whether it is subject to state taxation, whether it may sue or be sued in its own name, and whether it is separately incorporated. Third, the court examines the degree of autonomy the agency exercises. *Christy*, 54 F.3d at 1144.

STAT. ANN. § 17:29A–35(b)(2). Therefore, the court concluded that the JUA and the MTF have no right to payment from the debtor and consequently have no claim against the debtor. *In re Kish,* 221 B.R. at 133.

Turning to defendants Farmer and Kamin, the court examined whether the doctrine of Ex parte Young provided an exception to Eleventh Amendment immunity in a suit against the defendants in their official capacities. The court recognized that the doctrine carves out an exception to Eleventh Amendment immunity such that prospective injunctive relief may be sought in federal court against state officers in their official capacity for ongoing violations of federal law. The court identified the two instances in which the doctrine applies: (1) where there is no state forum available to vindicate federal interests, or (2) even if such a state forum is available, where the case calls for the interpretation of federal law. This case presents issues of federal bankruptcy law. The court concluded that application of the Ex parte Young doctrine is not limited to those cases in which no state forum is available. Moreover, the court stated that this case presents the classic circumstances in which the doctrine is applicable. Among other forms of relief requested, the debtor is seeking an injunction prohibiting defendants Kamin and Farmer from collecting or attempting to collect any prepetition surcharges. Such collection efforts would constitute a violation of federal bankruptcy law if the surcharge debt were discharged. Therefore, the relief the debtor seeks—prospective injunctive relief to prevent an ongoing violation of federal law—falls squarely within the Ex parte Young doctrine. Accordingly, the court held that the Ex parte Young doctrine is applicable and that the court may exercise jurisdiction over defendants Farmer and Kamin in their official capacities.

**3.** Although defendants' attorney's signature does not appear on the document labeled Joint Stipulations of Undisputed Facts, he

The stipulated facts are as follows.[3]

1. The debtor, Barbara June Kish, committed traffic violations in 1984 (operating while under the influence of liquor or drugs), 1986 (driving without liability insurance), and 1987 (driving without liability insurance and during period of suspension).

2. For each of these offenses except driving during a period of suspension, she was convicted in a municipal court, was fined and/or had her drivers license suspended.

3. The DMV imposed an additional surcharge in 1987 for operating a vehicle during suspension.

4. In addition to the fines imposed in municipal court, Ms. Kish received "insurance surcharge bills" from the DMV for each of these offenses and for the DMV suspension.

5. The surcharges totaled $3,000 for the DUI offense and $3,000 for the other offenses, a total of $6,000.

6. On December 20, 1994 the Director of the DMV filed a certificate of debt against Ms. Kish in the Superior Court of New Jersey, case DJ 18128294 for $6,000. Pursuant to statute, costs of $1,200 were added to that debt.

7. This amount was later corrected to $5,250 with costs of $1,050 when a duplicate assessment was discovered.

8. Ms. Kish paid off her municipal court fines but did not pay the surcharges.

9. Ms. Kish filed a chapter 7 bankruptcy case, number 95–36624, on September 20, 1995 in the U.S. Bankruptcy Court, District of New Jersey.

10. On September 21, 1995, the U.S. Bankruptcy Court clerk sent notices of Ms. Kish's bankruptcy filing to listed creditors, including the DMV, the Office of Surcharge and Collections, and a private collection attorney representing them.

stated at the hearing on May 4, 1999 that he adopts the stipulation in its entirety. (Transcript dated May 4, 1999, p. 3).

11. This Court granted a discharge in bankruptcy to Ms. Kish on December 20, 1995.

12. The Bankruptcy Court, or its agent, mailed a copy of this discharge in bankruptcy to the New Jersey Division of Motor Vehicles, the Office of Surcharge & Collections, and their collection attorney, who was by then no longer representing the DMV for collection of Ms. Kish's surcharge bills.

13. The defendants took no action against Ms. Kish while her case was pending. The defendants did not request any determination as to whether the surcharges were discharged.

14. On or about April 22, 1996 Ms. Kish's driver's license was restored. The DMV advised Ms. Kish that she did not then owe any additional monies prior to her license being restored.

15. The DMV charged and collected a fee for restoring Ms. Kish's license.

16. Notwithstanding its notice of Ms. Kish's bankruptcy and chapter 7 discharge, on May 17, 1996, the DMV, carrying out the policies of defendants Farmer and Kamin, or their predecessors, employees or agents, sent to Ms. Kish a collection letter demanding payment of $6,050 plus an unspecified amount of interest, for surcharges and costs which related to incidents before September 20, 1995.

17. Beginning with the Bankruptcy Court decision in *In re Kent*, 190 B.R. 196, Dec. 5, 1995, defendants Kamin, defendant Verniero's predecessor, or their subordinates, adopted the policy, which continues at the present time, of proceeding with the collection of surcharge bills from pre-bankruptcy incidents against debtors who have obtained a chapter 7 discharge in bankruptcy.

18. The following history of the JUA and MTF, quoted verbatim from this Court's decision in *Kish III*, 123, 124, 126 & fn. 3 is stipulated by both parties:

## A. History of the JUA and MTF.

"The JUA was· established in 1983 by the New Jersey Automobile Full Insurance Availability Act as an unincorporated, non-profit association of automobile insurers created to provide market rate insurance to drivers who were unable to pay the high cost of automobile insurance." *Kish I*, 204 B.R. at 128 (citing N.J.Stat. Ann. § 17:30E–1 to 17:30E–24). The JUA did not achieve its goals and by 1990 had accumulated $3.3 billion of debt in unpaid claims and other losses. *State Farm Mutual Automobile Ins. Co. v. State*, 124 N.J. 32, 42, 590 A.2d 191, 196 (1991).

"During its operation, the JUA derived income from premiums and investments." *Kish I*, 204 B.R. at 128 (citing N.J. Stat. Ann. 17:30E–8a). [S]urcharges for certain motor vehicle offenses and residual market equalization charges were also imposed to subsidize JUA income. *Kish I*, 204 B.R. at 128 (citing *In re Comm'r of Ins.'s March 24, 1992 Order*, 132 N.J. 209, 213, 624 A.2d 565, 567 (1993)).

On March 12, 1990, the legislature responded to the JUA's plight by enacting the Fair Automobile Insurance Reform Act (the "Reform Act") the principal purposes of which were to reduce insurance costs for New Jersey drivers, transfer drivers insured by the JUA to the private market, and provide a mechanism to pay off the JUA debt. N.J. Stat. Ann. §§ 17:33B–1 to 17:33B–63; *In re Kent*, 190 B.R. 196, 201 (Bankr.D.N.J.1995); *State Farm*, 124 N.J. at 42, 590 A.2d at 196. Pursuant to the Reform Act, the JUA was prohibited from issuing policies after September 30, 1990 and an insolvency trustee was appointed to terminate it. *In re Comm'r of Ins.'s Certification of Amendment*, 254 N.J.Super. at 625, 604 A.2d at 175 (citations omitted). The MTF was created by the Reform Act to effect the orderly phase out of the JUA. Assembly Appropriations Committee Statement, Assembly, No. 1–L.1990, c. 8. *See* N.J. Stat. Ann. § 17:33B–11(c)(5) (setting forth

schedule for mandatory depopulation of risks insured in the JUA and MTF').

The Reform Act created a special non-lapsing fund within the General Treasury, the New Jersey Automobile Insurance Guaranty Fund (the "AIG Fund"), to be utilized for satisfying the financial obligations of the JUA. N.J. STAT. ANN. § 17:33B–5(a) & (d). Surcharges collected by the DMV pursuant to N.J. STAT. ANN. 17:29A–35,[4] monies derived from a variety of other sources specified in N.J. STAT. ANN. § 17:33B–5(b) and funds borrowed from the New Jersey Property–Liability Insurance Guaranty Association ("PLIGA") were denominated for this purpose. *Id.* at § 17:33B–5(b) & (c).

Pursuant to the Reform Act, the MTF issued insurance policies during the transition of insured drivers to the voluntary market from October 1, 1990 to September 30, 1992. N.J. STAT. ANN. § 17:33B–11(c); (Letter from Krefetz to Court of 5/5/98 ("Krefetz Letter"), at 5.) The MTF's last policy expired on September 30, 1993. (Krefetz Letter, at 6.) Like the JUA, the MTF did not operate profitably and incurred significant liabilities. N.J. STAT. ANN. § 34:1B–21.2(c) ("In its present financial condition, it is likely that the facility would be declared financially impaired or insolvent..."). Both the JUA and the MTF remain in operation to service old claims. (Krefetz Letter, at 2.)

On June 29, 1994, the Good Driver Protection Act (the "GDPA") was enacted to pay claims against the MTF. N.J. STAT.

ANN. § 34:1B–21,1–34:1B–21.15. The GDPA developed a funding plan based on three sources: a) $439 million paid by MTF member insurers pursuant to court order; b) $665 million from the sale of MTF bonds; and c) $320 million in assessments to be paid by members of PLIGA. (Krefetz Letter, at 8 (citing Senate Budget and Appropriations Comm. Statement to Senate Bill no. 1250 (June 16, 1994))). The GDPA also amended N.J. STAT. ANN. § 17:33B–5 to provide payment of MTF "current and anticipated liabilities and expenses" from the AIG Fund. N.J. STAT. ANN. § 17:33B–5(c).

The sale of bonds was authorized pursuant to N.J. STAT. ANN. § 34:1B–21.4. The Division of Motor Vehicles Surcharge Fund (the "DMV Fund") and the Market Transition Facility Revenue Fund (the "MTF Fund") were created to fund the bonds. N.J. STAT. ANN. § 34:1B–21.4, § 34:1B–21.12.

The DMV Fund is a special non-lapsing fund within the Department of the Treasury. N.J. STAT. ANN. § 34:1B–21.12. The DMV Fund is comprised of monies transferred to the DMV Fund from the MTF as well as monies designated for the DMV Fund pursuant to N.J. STAT. ANN. § 17:29A–35(b)(2). *Id.* § 34:1B–21.12. Monies in the DMV Fund are managed and invested by the Division of Investment in the Department of the Treasury. *Id.*

The MTF Fund is a special non-lapsing fund within the NJEDA. N.J. STAT. ANN. § 34:1B–21.7. The MTF Fund comprised

---

4. Under New Jersey law as it currently stands, surcharges collected by the DMV minus the lesser of 10% or the cost of collection were remitted to the JUA until September 30, 1991. *Id.* § 17:29A–35(b)(2). From October 1, 1991, the surcharges (minus collection costs) were remitted to the AIG Fund. *Id.* § 17:29A–35(b)(2). In June, 1996, the Commissioner certified that, as of March 1, 1996, there were sufficient monies in the AIG Fund to satisfy the JUA's obligations. (Krefetz Letter, at 9.) Thereafter, all surcharges collected by the DMV pursuant to N.J. STAT. ANN. 17:29A–35(b) are remitted by the DMV to the Division of Motor Vehicles Surcharge Fund

(the "DMV Fund") for transfer to the Market Transition Facility Revenue Fund (the "MTF Fund") as provided in N.J. STAT. ANN. § 34:1B–21.12 for the purposes of N.J. STAT. ANN. § 34:1B–21.4. *Id.* § 17:29A–35(b)(2). After certification by the Commissioner that the surcharges are no longer needed to fund the JUA or when all MTF bonds, notes and obligations incurred pursuant to N.J. STAT. ANN. § 34:1B–21.4 and the costs thereof are no longer outstanding, the surcharges will be remitted to the PLIGA to repay any loans made by PLIGA to the AIG Fund. N.J. STAT. ANN. § 17:29A–35.

[sic] of monies transferred to the MTF Fund by the State Treasurer upon appropriation by the legislature pursuant to N.J. STAT. ANN. § 34:1B–21.13, surcharge monies collected pursuant to N.J. STAT. ANN. § 17:29A–35(b), interest or other income derived from the investment of monies in the MTF Fund, and any other monies that may be deposited. *Id.* The MTF Fund was also funded by a $100 million transfer by the State Treasurer of money transferred to the DMV Fund from the MTF. N.J. STAT. ANN. § 34:1B–21.14.

The applicable statutes, however, limit the use of the DMV Fund and the MTF Fund to payment of principal, interest and premium on MTF bonds or notes issued pursuant to N.J. STAT. ANN. §§ 34:1B–21.8, 34:1B–21.12.

19. The DMV collects the surcharge at issue, and it receives a percentage of the surcharges as an administrative expense.

20. The DMV does not collect the surcharge at issue for the benefit of the JUA or the MTF.

21. After receipt by DMV and deduction of its administrative percentage, the surcharge monies have never been deposited into New Jersey's General Fund, but have always been kept separate in one or more dedicated funds whose purposes have been limited to the payment of claims against the JUA or MTF, payoff of the JUA or MTF deficits, and/or retirement of the bonds issued to pay JUA or MTF claims. A flow chart attached to Mr. Krefetz' letter to the court of May 5, 1998, reflects where the surcharges are channeled.

22. With the exception of a state-appointed trustee and two other persons, the employees of the JUA and MTF were not employees of New Jersey.

23. New Jersey taxed the JUA and the MTF on their insurance premiums, using the same law, N.J. STAT. ANN. § 54:18A–1 *et seq.,* which New Jersey used to tax private insurance companies.

24. At the time scheduled for trial (May 4, 1999), use of the surcharges was limited to payment of MTF bonds.

### *The Debtor's Position*

The debtor contends that the defendants bear the burden of proving the nondischargeability of the surcharges under Code section 523(a), as all exceptions to discharge must be proved by the party seeking nondischargeability, whether that party is the plaintiff or the defendant. In this case, the debtor argues that the defendants have failed to meet their burden by failing to satisfy two elements of section 523(a)(7). First, the defendants have failed to establish that the surcharges are penal in nature and not compensation for actual pecuniary loss. Second, the defendants have failed to establish that the surcharges are payable for the benefit of a governmental unit.

In support of her first contention, the debtor argues that Code section 523(a)(7) contemplates the nondischargeability of those obligations that are penal in nature. The scope of the Code section therefore extends only to those obligations that are punitive rather than those which operate as a funding mechanism. Focusing on the purpose of the Code section, the debtor argues that section 523(a)(7) is designed to prohibit discharge of those debts imposed in criminal cases. Such obligations, the debtor notes, may include restitution orders in connection with criminal proceedings, however, the section does not extend to debts of a civil and remedial character. Since the debtor's surcharges were intended to raise money rather than to punish, she concludes that they do not constitute a "fine, penalty or forfeiture" within the meaning of section 523(a)(7) and thus are dischargeable.

The debtor's second argument in support of dischargeability focuses on the language "payable to and for the benefit of a governmental unit." The debtor notes that the defendants argue the surcharges are payable to the DMV for the benefit of

the citizens of New Jersey, not for the benefit of the JUA or the MTF. The term "benefit", the debtor contends, must be construed to mean only pecuniary benefit. The statutory language does not permit the defining of "for the benefit of a governmental unit" as meaning some generalized positive effect on the citizens of New Jersey. The debtor concludes that the citizens of New Jersey are not governmental units and collection of surcharges for distribution for the benefit of all state citizens does not constitute a "governmental function" within the meaning of section 523(a)(7).

Alternatively, the debtor argues that the debt is not excepted from discharge under § 523(a)(1) because even if the surcharge qualifies as an excise tax, as the defendants argue, it arose out of a transaction that occurred more than three years before the filing of the bankruptcy petition. Consequently, the debtor argues that these surcharges are not entitled to priority under Code section 507(a)(8)(E)(ii), and they are therefore not excepted from discharge under Code section 523(a)(1).

### The Defendants' Position

The defendants acknowledge that the surcharges in question are civil penalties which are remedial in character. Such characterization, however, does not conclusively establish that the surcharges are not fines or penalties within the meaning of Code section 523(a)(7). The defendants argue that civil penalties are nondischargeable under section 523(a)(7). To avoid any conflict with the Double Jeopardy Clause, the defendants note that such civil penalties are remedial and rehabilitative rather than punitive. The defendants argue, however, that the surcharges do not constitute "compensation for actual pecuniary loss" merely because they serve a remedial purpose because they are not dollar-for-dollar reimbursement for monetary loss.

Addressing the requirement that the debt be "payable to or for the benefit of a governmental unit", the defendants contend that the maintenance of a stable insurance environment is an essential governmental function. Thus, the defendants reason that payment that benefits all New Jersey drivers by assuring market rate insurance satisfies the statutory restriction limiting nondischargeability to those debts payable for the benefit of a governmental unit.

Alternatively, the defendants assert that the surcharge debt is an excise tax within the meaning of Code section 507(a)(8)(E) and therefore is nondischargeable under section 523(a)(1). In support of their argument, defendants analogize motor vehicle surcharge debts to assessments exacted from uninsured motorists. Defendants maintain that surcharge debts are comparable to uninsured motorist assessments because monies from both are used to fund programs for the benefit of the general public. Following the reasoning of a case which has characterized uninsured motorist assessments as excise taxes under Virginia law, the defendants argue that the surcharge debt is nondischargeable.

## CONCLUSIONS OF LAW

### A. The Ex parte Young doctrine applies.

The basis of the court's jurisdiction over the defendants rests upon the doctrine of Ex parte Young, an exception to Eleventh Amendment immunity. In *Kish III*, the court concluded that the doctrine was applicable to the instant case since the debtor was seeking to prospectively enjoin any further attempts to collect the surcharge debt and any future revocation of driving privileges based upon a failure to pay this allegedly discharged obligation. *In re Kish*, 221 B.R. at 136–37.

The defendants filed a letter with the court dated June 25, 1999 arguing that *Alden v. Maine*, 527 U.S. ——, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), a decision of the Supreme Court of the United States rendered on June 23, 1999, supports its position that Ex parte Young is inapplica-

ble in the instant matter. The defendants contend that in *Alden* the Court limited the doctrine's application to suits against state officials in federal court for the purpose of determining whether a state statute is constitutional when the state denies review of the statute. The debtor filed a letter response dated June 30, 1999 in which she disputes the defendants' interpretation of *Alden*. The debtor argues that *Alden* stands only for the proposition that sovereign immunity prevents suits in state court to recover damages from a state unless the state consents.

■ The debtor is correct. The Court referred to the Ex parte Young doctrine in *Alden* as a protection against state abuse of sovereign immunity and did not indicate any intention to modify the Ex parte Young doctrine. *Alden v. Maine*, 527 U.S. at ——, 119 S.Ct. at 2262–63. As this court noted in *Kish III*, the Supreme Court reiterated in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), that "[a]n allegation of an on-going violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." *Kish*, 221 B.R. at 136–37 (quoting *Coeur d'Alene*, 521 U.S. at 281, 117 S.Ct. 2028). The defendants' desire to limit application of the Young doctrine to cases where there is no remedy in a state forum has no foundation in the Supreme Court's Eleventh Amendment jurisprudence.

■ As such, the *Alden* decision cannot be characterized as supervening new law warranting departure from the law of the case as stated in *Kish III*. The doctrine of law of the case prevents, in the absence of exceptional circumstances, reopening, in successive stages of litigation, previously decided issues of law. It is founded upon the principle that a court should be bound by its earlier decisions in

a case. *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983).

## B. Burden of establishing subject matter jurisdiction

For the court to exercise jurisdiction over the defendants in their official capacities, the debtor must plead an ongoing violation of federal law for which she seeks prospective injunctive relief. In the instant case, attempting to collect debts which have been discharged under chapter 7 of the Bankruptcy Code would violate the discharge injunction in section 524 of the Bankruptcy Code [5] and thereby establish the basis for applying the Ex parte Young doctrine.

■ The defendants contend that because the debtor bears the burden of establishing subject matter jurisdiction and the applicability of the Ex parte Young doctrine, she also bears the burden of proving that the surcharge debt has been discharged. This argument is without merit.

■ First of all, subject matter jurisdiction does not depend upon the outcome of the litigation, but rather upon the nature of the complaint. Applying the defendants' reasoning, jurisdiction would not exist unless the debtor ultimately proved that the defendants violated federal bankruptcy law by continuing collection efforts post-discharge. However, the debtor would have no opportunity to prove the fact in consequence if the existence of jurisdiction were predicated on the ultimate outcome. The Supreme Court of the United States held in *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) that

> [T]he court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine is-

**5.** Code section 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to col-

lect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."

sues of fact arising in the controversy. Jurisdiction, therefore, is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.... Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.

*Id.*, 327 U.S. at 682, 66 S.Ct. 773. *See also, Airco Industrial Gases, Inc. v. Teamsters Health and Welfare Pension Fund of Philadelphia and Vicinity*, 850 F.2d 1028, 1032 (3d Cir.1988)(noting the distinction between subject matter jurisdiction and the existence of a cause of action). In *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277 (3d Cir. 1993), the court stated that "a district court has federal question jurisdiction in any case where a plaintiff with standing makes a non-frivolous allegation that he or she is entitled to relief because the defendants' conduct violated a federal statute." *Id.* at 1281. Thus, the court has jurisdiction over the causes of action pled in the complaint.

## C. Burden of proof as to nondischargeability of the surcharge debt

■ The creditor bears the burden of proving the nondischargeability of a debt under Code section 523(a). *Insurance Co. of North America v. Cohn (In re Cohn)*, 54 F.3d 1108, 1114 (3d Cir.1995)("The burden of proving that a debt is nondischargeable under § 523(a) is upon the creditor, who must establish entitlement to an exception by a preponderance of the evidence."). *See also In re Bero*, 110 F.3d 462, 465 (7th Cir.1997); *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994). The Supreme Court of the United States held in *Grogan v. Garner* that the creditor must prove nondischargeability by a preponderance of the evidence. 498 U.S. 279, 287–88, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991).

■ Following the standard announced by the Supreme Court, this court concludes that the defendants as representatives of creditor DMV bear the burden of proving that the surcharge debt is nondischargeable under Code sections 523(a)(7) or 523(a)(1).

To summarize the court's conclusions as to the relationship between the burden of establishing jurisdiction and the burden of proof, the debtor plaintiff bears the burden of establishing that the court has jurisdiction over the matters at issue. Jurisdiction has been established by the allegations that the debtor owed a surcharge debt to the DMV which was discharged under the Bankruptcy Code, and that the defendants are attempting to collect the debt notwithstanding the discharge. The parties have stipulated to the facts of the debt and the discharge, but disagree as to whether the debt is dischargeable in nature. The defendants bear the burden of proving that the debt is nondischargeable.

## D. Section 523(a)(7)

■ Section 523(a)(7) excepts from discharge any debt "to the extent such debt is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty...." 11 U.S.C. § 523(a)(7). Establishing nondischargeability under this section requires proof of all of the following elements: (1) the debtor incurred a debt; (2) the debt constitutes a fine, penalty or forfeiture; (3) the debt is payable to a governmental unit; (4) the debt is payable for the benefit of a governmental unit; (5) the debt is not compensation for actual pecuniary loss; (6) the debt is other than a tax penalty. In this case, the parties concede that the obligation is a debt that is payable to a governmental unit. Elements 2, 4, 5 and 6 are the subject of the instant dispute.

### (1) Fine, penalty or forfeiture

The court addressed this element of section 523(a)(7) in substantial detail in *Kish*

*I,* concluding that the surcharge debt is a penalty within the meaning of Code section 523(a)(7). *See, Kish,* 204 B.R. at 129–30. The opinion was vacated to permit further development of the record as to the facts. The parties have now stipulated to the facts stated above.

 With respect to the court's conclusions of law in *Kish I* on this component of the statute, the debtor relies on the case of *Commonwealth of Virginia, et al. v. Herbert M. Collins, et al. (In re Collins),* 173 F.3d 924 (4th Cir.1999). In *Collins,* the Commonwealth of Virginia attempted to collect judgments against Collins, the debtor, for pre-bankruptcy judgments on forfeited bail bonds. 173 F.3d at 926. "Under Virginia law surety bonds posted by professional sureties are contractual obligations, subject to the general rules of contract law." *Id.* at 932. As such, the debtor's liability arose from a purely contractual obligation, not in connection with his commission of a penal act. "From the standpoint of the bondsman, the 'forfeiture' of a bail bond is more akin to triggering liquidated damages for breach of his contract with the state than it is to triggering a penal sanction against him." *Id.* at 932. The court therefore concluded that his liability on the debt was not a fine, penalty or forfeiture within the meaning of section 523(a)(7) and thus the debt was discharged.

 By contrast, the surcharge debts at issue here were imposed as a result of the debtor's violations of New Jersey motor vehicle laws. *Collins* is distinguishable, and the court hereby reiterates the following conclusions of law from *Kish I:*

> The debtor...contend[s] that surcharges which are imposed to supplement the JUA may not be characterized as nondischargeable fines or penalties because they are not punitive in nature. The debtor...do[es] not dispute the defendants' assertion that the surcharges are penalties, but contend[s] rather that the surcharges are not the type of penalties Congress intended to except from discharge. Instead, [she] argue[s] that only penalties intended to punish, deter or rehabilitate fall within the scope of section 523(a)(7). Neither the plain language of the statute nor case law, however, compels or supports such a restrictive interpretation. The language of subsection (a)(7) expressly excepts from discharge "fines, penalties or forfeitures." 11 U.S.C. § 523(a)(7). While it is well settled that punitive penalties imposed for violations of criminal laws fall within the coverage of section 523(a)(7), see, e.g., *Kelly v. Robinson,* 479 U.S. 36, 50–52, 107 S.Ct. 353, 361–62, 93 L.Ed.2d 216 (1986), the parties have cited no authority for the proposition that civil and remedial penalties are excluded from the statute's coverage. Though the court is mindful of the principle that exceptions to discharge must be narrowly construed, *see Insurance Co. of N. Am. v. Cohn (In re Cohn),* 54 F.3d 1108, 1113 (3d Cir.1995), absent such restrictive language, the court declines to read such a limitation into the statute. *See In re Lugo,* 94 B.R. 335, 342 (D.N.J.1989) (declining to restrict discharge exception where neither statutory language nor legislative history clearly expressed such intent).

Though the Third Circuit has not expressly ruled on the matter, courts within this district that have recently considered the dischargeability of motor vehicle surcharges have expressly held that the surcharges are civil penalties within the scope of Code section 523(a)(7). *See, e.g., Kent,* 190 B.R. at 202 ("We conclude that a motor vehicle surcharge constitutes a 'penalty' for purposes of section 523(a)(7)."); *Curtin v. New Jersey Div. of Motor Vehicles (In re Curtin),* 206 B.R. 694, 696 (Bankr.D.N.J.1996) ("[T]he New Jersey motor vehicles surcharge, an assessment imposed upon drivers for violating certain motor vehicles laws, constitutes a 'penalty' within the meaning of section

523(a)(7)."); *see also, In re Bill,* 90 B.R. 651, 655 (Bankr.D.N.J.1988) (finding that merit rating plan surcharge is "a penalty imposed to supplement the JUA"); *Clark v. New Jersey Div. of Motor Vehicles,* 211 N.J.Super. 708, 711, 512 A.2d 588 (App.Div.1986) (labeling surcharges "civil penalties" reasoning that imposition of motor vehicle surcharges had remedial and civil purpose and effect). The *Kent* court, in so holding, considered the breadth of Code section 523(a)(7) in light of the recent amendment to section 523(a)(9) which eliminated motor vehicle surcharges from its coverage. See *Kent,* 190 B.R. at 199. Examining the nature and evolution of the JUA, the court instructed that the motor vehicle surcharge scheme was designed to place the financial burden for the cost of insuring high risk drivers on those responsible for the increased cost of insurance. See *id.,* 190 B.R. at 200–01. The court then defined penalty as a sum of money exacted as punishment for the commission of a prohibited act, and reasoned that surcharges which were mandatorily imposed as a consequence of certain serious motor vehicle offenses, fell within the definition and thus within the breadth of subsection (a)(7). *See id.* at 202. This court agrees with the reasoning in *Kent* and accordingly finds that the surcharges imposed against the debtor in the instant case as a consequence of the debtor's violations of certain motor vehicles laws are civil penalties within the meaning of Code section 523(a)(7).

204 B.R. 122, 129–30 (Bankr.D.N.J.1997).

### (2) Not compensation for actual pecuniary loss

■ The debtor's violations of the motor vehicle laws in this case did not cause any actual pecuniary loss to the DMV, JUA or MTF, or to anyone else for that matter. The justification for the surcharges is that individuals who violate certain motor vehicle laws are more likely to be involved in accidents than those who do not commit such violations, thereby raising insurance costs because of resulting personal injury and property damage claims. *In re Kent,* 190 B.R. at 200–01. That causal relationship is too attenuated, however, to support the conclusion that the surcharges are compensation for actual pecuniary loss within the meaning of Code section 523(a)(7). The term "actual pecuniary loss" clearly connotes measurable damages from particular instances of wrongdoing. There is nothing in the record indicating that the amount of DMV surcharges in a particular case is determined by actual losses caused in such case, or that this debtor caused any actual pecuniary loss at all.

■ Moreover, it has been held that even if a penalty is based in part on measurable pecuniary loss, it will not be deemed compensation for such loss under 523(a)(7) if its primary purpose is penal. In *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), the Supreme Court held that a restitution obligation imposed as part of a criminal sentence for welfare fraud was nondischargeable under Code section 523(a)(7) because its primary purpose is rehabilitative and penal, not compensatory. 479 U.S. at 53, 107 S.Ct. 353. That reasoning also applies to civil penalties. In *U.S. Dep't of Housing & Urban Development v. Cost Control Marketing & Sales Management of Virginia, Inc.,* 64 F.3d 920 (4th Cir.1995), HUD brought a civil action for violation of the antifraud provisions of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701–1720. The court held that because the judgment for disgorgement of wrongful profits was penal in nature, it was nondischargeable under Code section 523(a)(7) even if injured persons may thereby receive compensation for actual pecuniary loss. *Id.* at 928. *See also U.S. v. WRW Corporation,* 986 F.2d 138 (6th Cir.1993), and *Cillo v. The Florida*

*Bar (In re Cillo)*, 165 B.R. 46 (M.D.Fla. 1994).

It follows that DMV surcharges are not compensation for actual pecuniary loss within the meaning of Code section 523(a)(7).

### (3) For the benefit of a governmental unit

Code section 523(a)(7) requires that the fine, penalty or forfeiture be payable not only "to" a governmental unit, but also that it be "for the benefit of a governmental unit." "Governmental unit" is defined at Code section 101(27) to mean

> United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government . . . .

The parties stipulated that the surcharge is not collected for the benefit of the JUA or the MTF. (Jt. Stip. of Facts ¶ 20). They further stipulated that surcharges are distributed to one or more dedicated funds whose purposes have been limited to the payment of claims against the JUA or MTF, payoff of the JUA or MTF deficits, and/or retirement of the bonds issued to pay JUA or MTF claims. (Jt. Stip. of Facts ¶ 21). The defendants offered no further facts to meet their burden of proving that the surcharges are payable for the benefit of a governmental unit. Instead, the defendants argue that the issue is not the recipient of the surcharges per se, but rather that in collecting the surcharges for distribution to third parties the state is performing a legitimate governmental function which will inure to the general benefit of the state's citizens.

The court does not doubt that by collecting surcharges for payment to third parties the state is performing a legitimate governmental function, but that is not the issue under Code section 523(a)(7). The issue is whether the collections are "for the benefit of a governmental unit." It is apparent from the definition of "governmental unit" in Code section 101(27) that the citizens of New Jersey as a whole are not a governmental unit.

The Seventh Circuit examined this issue in *In re Towers*, 162 F.3d 952 (7th Cir. 1998). The State of Illinois sought nondischargeability of a civil restitution obligation payable by the debtor to the state attorney general for the benefit of victims of the debtor's fraud. *Id.* But unlike in *Kelly v. Robinson*, where the government kept the restitution for welfare fraud because the state was the victim, the attorney general in *Towers* paid the money to private parties. *Id.* at 955. Acknowledging that deterrence of fraud would ultimately inure to the general welfare of the state's citizens, the Seventh Circuit nonetheless concluded that for purposes of section 523(a)(7) the benefit must be pecuniary.

> Deterrence of fraud is a benefit to all of the state's citizens. If restitution adds to the punch of the criminal law, then so much the better. Some language in *Kelly* suggests this possibility. But the context in which "benefit" appears— "payable to and for the benefit of a governmental unit"—implies that the "benefit" in question is the benefit of the money that is "payable to" the governmental unit. In *Kelly* the government received and kept the money; not so here. Citizenry at large may get the benefit of deterrence, but neither the people of Illinois nor any governmental unit receives a financial benefit from the restitution that Towers has been directed to pay, and the "governmental unit" does not receive any benefit from general deterrence either.

*Id.* at 956.

The analysis in *Towers* is persuasive. Interpreting "benefit" to include some generalized positive public effect would

distort the meaning of section 523(a)(7) to bring within its coverage any and all monetary obligations which may in some way inure to the general welfare of the state's citizens. *See, Kelly v. Robinson,* 479 U.S. at 56 n. 3, 107 S.Ct. 353 (concluding in dissent that if this statutory requirement were construed to include a benefit to society as a whole, any fine, penalty or forfeiture would be for the benefit of a governmental unit, thereby rendering this qualifying language superfluous). Thus the test under this element of Code section 523(a)(7) is whether a governmental unit receives a monetary benefit from the payment in question.

Since the defendants have stipulated that neither the JUA nor the MTF is the beneficiary of such monies and have failed to offer other evidence that a governmental unit is the recipient of such benefit, they have failed to satisfy their burden of proving this element of section 523(a)(7) by a preponderance of the evidence.

### (4) Other than a tax penalty.

■ The phrase "other than a tax penalty" is rather cumbersome, as it creates an exception to an exception. Section 523 states:

(a) a discharge under section 727, 1141, 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other then a tax penalty—

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

11 U.S.C. § 523(a)(7). Subsection (A) permits discharge of a tax penalty where the underlying tax is also dischargeable. *McKay v. United States,* 957 F.2d 689, 693 (9th Cir.1992). Subsection (B) permits discharge of tax penalties imposed in connection with a transaction which occurred more than three years before the petition filing date. *Id. See also, Roberts v. United States (In re Roberts),* 906 F.2d 1440, 1444 (10th Cir.1990)(holding that a penalty related to a dischargeable tax liability is immediately dischargeable whereas every other tax penalty becomes dischargeable after three years).

■ As to whether a DMV surcharge is a tax penalty relating to a nondischargeable tax within the meaning of Code section 523(a)(7)(A), it is apparent that it is not a tax penalty at all, since it is not based upon a tax liability, but rather upon a violation of motor vehicles laws. Even if the DMV surcharges imposed on the debtor in this case were tax penalties under § 523(a)(7)(A), however, they would nevertheless be dischargeable under Section 523(a)(7)(B) because they were imposed more than three years before the filing of the petition. *McKay v. United States,* 957 F.2d at 693 ("A penalty imposed on unpaid taxes accruing more than three years before the filing of the bankruptcy petition is dischargeable.")

### E. Section 523(a)(1)

Alternatively, the defendants argue that the surcharge is a nondischargeable tax pursuant to section 523(a)(1). Section 523(a)(1)(A) excepts from discharge a tax "of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed." Specifically, defendants contend that the surcharge is an excise tax within the meaning of Code section 507(a)(8)(E).[6] In support of their argu-

6. Included as claims entitled to priority in payment under Code section 507(a)(8)(E) are excise taxes on: (i) a transaction occurring

before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after

ment, defendants rely on a decision by the Court of Appeals for the Fourth Circuit, *Williams v. Motley*, 925 F.2d 741 (4th Cir.1991), in which the court held that Virginia's motor vehicle assessments for the operation of an uninsured motor vehicle were excise taxes.

■ Assuming *arguendo* that a DMV surcharge is an excise tax, the surcharges in this case are nevertheless dischargeable because they were imposed for transactions occurring more than three years before the bankruptcy petition was filed. They are therefore not entitled to priority under Code section 507(a)(8)(E)(ii), and are not excepted from discharge under Code section 523(a)(1). The court therefore does not have to determine in this case whether a DMV surcharge is an excise tax, and declines to do so until a case arises in which that determination is required because surcharges were imposed for transactions occurring within three years of the petition date.

It does, however, appear that *City of New York v. Feiring*, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941), on which *Williams v. Motley* relied, defines "tax" broadly as (a) an involuntary pecuniary burden, regardless of name, imposed upon individuals or property; (b) imposed by, or under authority of the legislature; (c) for public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; (d) under the police or taxing power of the state. *Williams v. Motley*, 925 F.2d at 743. An excise tax is a tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege. Black's Law Dictionary, Sixth Ed., p. 563. The term is defined broadly to include various license fees. *Id.* It has been held that workers compensation premiums are excise taxes. *Yoder v. Ohio Bureau of Workers' Compensation (In re Suburban Motor Freight, Inc.)*, 998 F.2d 338 (6th

Cir.1993). *But see In re Metro Transportation Company*, 117 B.R. 143 (Bankr. E.D.Pa.1990). These authorities may assist analysis of whether a DMV surcharge is an excise tax in cases where the issue must be decided.

## F. The consequences of discharge of DMV surcharges

■ The DMV surcharges at issue are not excepted from discharge under Code section 523(a)(7) because the defendants have not met their burden of proving that the surcharges are payable for the benefit of a governmental unit. The surcharges are not excepted from discharge under Code section 523(a)(1) because even if they are excise taxes, they were incurred on transactions occurring more than three years before the petition date. The court therefore holds that the prepetition DMV surcharges at issue in this case are discharged. As previously noted, Code section 524 provides that a discharge enjoins any act to collect a discharged debt. Since the defendants have taken action after the discharge to collect the surcharges in question, in violation of Code section 524, the debtor is entitled under the doctrine of Ex parte Young to an order permanently enjoining them from any further action to collect these surcharges.

■ The debtor also seeks an injunction prohibiting defendants from discriminating against her as a result of the discharge by revoking or suspending her driving privileges due to nonpayment of the surcharges in question. Code section 525(a) provides that a governmental unit may not revoke or suspend a license of a debtor due solely because of failure to pay a debt which has been discharged. The debtor is therefore entitled to an injunction prohibiting the defendants from suspending the debtor's license because of failure to pay these surcharges. *In re*

---

three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition.

*Bill*, 90 B.R. 651, 658 (Bankr.D.N.J.1988). The court notes, however, that the debtor has apparently been convicted of postpetition instances of driving under the influence of alcohol or drugs, which presumably has resulted or will result in additional DMV surcharges. Code section 525 only applies if the debt is dischargeable. *Johnson v. Edinboro State College*, 728 F.2d 163, 165 (3d Cir.1984). Since surcharges for postpetition motor vehicle violations are not dischargeable, the defendants are not enjoined from taking any actions authorized by state law regarding any such additional surcharges.

The debtor's complaint also sought an injunction under 42 U.S.C. § 1983 prohibiting defendants from enforcing N.J. STAT. ANN. § 17:29A–35, the surcharge statute, against any person who has discharged or will discharge a DMV surcharge. The parties have not briefed the application of 42 U.S.C. § 1983 here, and the court therefore deems that request abandoned.

The complaint also requested a declaratory judgment that N.J. STAT. ANN. 17:29A–35 conflicts with Bankruptcy Code sections 523, 524 and 525 and is therefore invalid under the Supremacy Clause of the U.S. Constitution. This court has previously noted that to the extent that application of N.J. STAT. ANN. 17:29A–35 conflicts with the Bankruptcy Code in a particular case, the state statute must yield under the Supremacy Clause. *In re Bill*, 90 B.R. at 657 (citing *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971)). The parties have not briefed this issue, however, and the court sees no need in this case to address the issue further.

### CONCLUSION

The prepetition DMV surcharges at issue in this case were discharged. The defendants are enjoined from taking any further action to collect the discharged surcharges, and from suspending or revoking the debtor's driver's license because of failure to pay the discharged surcharges. The debtor shall submit an order within ten days on notice under D.N.J. LBR 9072–1(c).