## NATIONAL RAILROAD PASSENGER CORPORATION,

v.

**The PENNSYLVANIA PUBLIC UTILITY COMMISSION; John M. Quain, Chairman; Robert K. Bloom, Vice Chairman; Nora Mead Brownell, Commissioner; Aaron Wilson, Jr., Commissioner; Terrence J. Fitzpatrick, Commissioner; Norfolk Southern Railway Company; CSX Transportation, Inc.; The Southeastern Pennsylvania Transportation Authority; John K. Leary, General Manager, Appellants.**

No. 01–2419.

United States Court of Appeals, Third Circuit.

Argued Jan. 22, 2002.

Opinion Filed May 1, 2002.

**522**

Susan D. Colwell, Elizabeth L. Januzzi (Argued), Pennsylvania Public Utility Commission, Harrisburg, PA, Attorneys for Appellants.

John L. Moore, Jr. (Argued), Piper, Marbury, Rudnick & Wolfe, Washington, DC, and Joseph Kernen, Elizabeth J. Feeney, Piper, Marbury, Rudnick & Wolfe, Philadelphia, PA, Attorneys for Appellee.

Before: NYGAARD and STAPLETON, Circuit Judges, and CAPUTO,* District Judge.

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

In this appeal we consider whether the District Court properly applied the doctrine of collateral estoppel to preclude the Pennsylvania Public Utility Commission (the "PUC") from relitigating its claim to Eleventh Amendment immunity. Because we find that all requirements for application of collateral estoppel are met and no equitable considerations counsel against its application, we will affirm.

### I.

This case arises out of proceedings initiated by the Southeastern Pennsylvania Transportation Authority ("SEPTA") before the PUC. SEPTA petitioned the PUC for the right to construct certain "partial high-level passenger platforms" at five passenger stations owned by National Railroad Passenger Corporation ("Amtrak"), along Amtrak's northeast corridor. Although Amtrak was not a party to the administrative adjudication, Amtrak advised the PUC that in its view the PUC had no jurisdiction over the issues raised by SEPTA because those issues were either preempted by federal law or subject to arbitration. Despite Amtrak's objection, the PUC administrative law judge adjudicated the matter and issued a recommended decision. On appeal to the full PUC, the Commissioners ordered the ALJ to reopen the proceeding and issued an order joining Amtrak as an indispensable party to the proceeding.

Prior to a scheduled pre-hearing conference on remand to the ALJ, Amtrak filed this action against the PUC and the PUC's five commissioners asserting its federal preemption claims and seeking to compel arbitration. In response, the PUC[1] filed a motion to dismiss this case asserting, among other things, that the PUC was an arm of the government of the Commonwealth of Pennsylvania and immune from suit in federal court under the Eleventh Amendment. Amtrak opposed the motion arguing that the PUC was precluded from relitigating its status under the Eleventh

---

* Honorable A. Richard Caputo, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

1. Except where it is relevant to distinguish between them, we will refer to the PUC and the individual commissioners collectively as the "PUC."

Amendment because Amtrak had already won a prior decision against the PUC on that issue in 1997 in *National Railroad Passenger Corp. v. Commonwealth of Pennsylvania Public Utility Commission*, CIV. A. No. 86–5357, 1997 WL 597963, (E.D.Pa. Sep.15, 1997).

In 1987, in the earlier suit, Amtrak secured a permanent injunction, based on the authority of 45 U.S.C. § 546b,[2] barring the PUC from assessing against Amtrak the cost of maintaining the Cassatt Avenue highway bridge in the Townships of Tredyffrin and Easttown, Pennsylvania. *See National R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 665 F.Supp. 402 (E.D.Pa.1987). This Court affirmed. *See* 848 F.2d 436 (3d Cir.1988). Several years later, Amtrak moved to broaden the injunction to bar assessment of Amtrak for the repair, maintenance or replacement of any highway bridges in the Commonwealth. In response, the PUC asked the court to dissolve the injunction on the ground that it was entered in violation of its Eleventh Amendment immunity. Specifically, the PUC argued that the District Court could not base its injunction on 49 U.S.C. § 24301(1) because that provision was enacted under Congress's Article I powers and thus could not abrogate the PUC's immunity. Amtrak made three arguments in opposition to the PUC's motion. First, Amtrak contended that Eleventh Amendment immunity should not apply because it is a federal entity. Second, Amtrak argued that the PUC could not raise the shield of

---

**2.** 45 U.S.C. § 546b was passed on September 10, 1982, Pub.L. 97–257, § 107. At the time of the earlier suit the statute provided:

> § 546b. Exemption from taxes or other fees imposed by any State, political subdivision, or local taxing authority levied on the Corporation or any railroad subsidiary; covered period; jurisdiction to enforce exemption
>
> Notwithstanding any other provision of law, the National Railroad Passenger Corporation (the "Corporation") shall be exempt from any taxes or other fees imposed by any State, political subdivision of a State, or local taxing authority which are levied on the Corporation, or any railroad subsidiary thereof, from and after October 1, 1981, including such taxes and fees levied after September 30, 1982: *Provided, however*, That notwithstanding any provision of law, the Corporation shall not be exempt from any taxes or other fees which it is authorized to pay as of September 10, 1982. Taxes and fees levied on the Corporation or any railroad subsidiary thereof by States, political subdivisions of States, or local taxing authorities with respect to periods beginning prior to October 1, 1981, shall be payable in proportion to the part of the relevant tax period which elapsed prior to such date. Notwithstanding the provision of section 1341 of title 28, the United States district courts shall have original jurisdiction

over any civil actions brought by the Corporation to enforce the exemption conferred hereunder and may grant equitable or declaratory relief as requested by the Corporation.

45 U.S.C. § 546b (1988). This section was repealed by § 7(b) of the Act of July 5, 1994, Pub.L. No. 103–272, 108 Stat. 1379, and reenacted with linguistic, but not substantive changes and recodified by § 1(e) of the same act, 108 Stat. 904. *See* H.R.Rep. No. 103–180 at 1, 3, 4 (1993), *reprinted in* 1994 U.S.C.C.A.N. 818, 820, 822. The relevant section of the 1994 statute stated:

> Exemption from taxes levied after September 30, 1981.
>
> (1) Amtrak or a rail carrier subsidiary of Amtrak is exempt from a tax or fee imposed by a State, a political subdivision of a State, or a local taxing authority and levied on it after September 30, 1981. However, Amtrak is not exempt under this subsection from a tax or fee that it was required to pay as of September 10, 1982.
>
> (2) The district courts of the United States have original jurisdiction over a civil action Amtrak brings to enforce this subsection and may grant equitable or declaratory relief required by Amtrak.

49 U.S.C. § 24301(1) (1994). That section has since been amended by the Act of December 2, 1997. *See* Pub.L. 105–134, § 208, 111 Stat. 2584. Throughout the remainder of this opinion we will cite to the statute as § 24301.

immunity because it is not an arm or alter ego of the state. Finally, Amtrak argued that it should be allowed to amend its complaint to include the individual commissioners because it sought only prospective injunctive relief, and these individuals were amenable to suit under *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

On September 15, 1997, the District Court issued a comprehensive memorandum opinion denying the PUC's motion to dissolve the injunction. After finding that Amtrak is not a federal entity for the purposes of the doctrine of Eleventh Amendment immunity, the District Court considered the question of whether the PUC is an arm of the Commonwealth of Pennsylvania entitled to Eleventh Amendment immunity. *See National R.R. Passenger Corp.*, 1997 WL 597963, at *6. The court properly analyzed this issue under the three prong test of *Christy v. Pennsylvania Turnpike Commission*, 54 F.3d 1140 (3d Cir.1995), which requires a court to determine:

> (1) whether, in the event the plaintiff prevails, the payment of the judgment would come from the state (this includes three considerations: whether the payment will come from the state's treasury, whether the agency has sufficient funds to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts); (2) the status of the agency under state law (this includes four considerations: how state law treats the agency generally, whether the agency is separately incorporated, whether the agency can sue and be sued in its own right, and whether it is immune from state taxation); and (3) what degree of autonomy the agency enjoys.

*Id.* at 1144–45.

The District Court found that the first factor, the source of the funds to satisfy any judgment, "weigh[ed] heavily in support of the finding that the [PUC] is not an arm or alter ego of the Commonwealth." *National R.R. Passenger Corp.*, 1997 WL 597963, at *8. However, it found that the second factor, the "status under the law," weighed in favor of the PUC, and the third factor, autonomy, weighed "ever so slightly in favor of the [PUC]." *Id.* at *10. In balancing the relative merit and weight of all three factors, the District Court concluded that because the funding factor was the most important factor and it weighed so heavily against the PUC, "the second and third factors, although weighing in favor of the [PUC], simply do not tip the scales in favor of a finding" that the PUC is an arm or alter ego of the Commonwealth. *Id.* Thus, the court concluded that the PUC is not protected by Pennsylvania's cloak of Eleventh Amendment immunity and declined to dissolve the injunction. The PUC did not appeal from this decision or the District Court's February 1998 denial of the PUC's renewed motion to dissolve the injunction filed under Rule 60(b).

In this case, the District Court held that the PUC was collaterally estopped to relitigate the issue of whether it was entitled to Eleventh Amendment immunity. Accordingly, it denied the PUC's motion to dismiss. The PUC timely appealed invoking this Court's jurisdiction under the collateral order doctrine. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

## II.

In *Witkowski v. Welch*, 173 F.3d 192, 198 n. 7 (3d Cir.1999), we noted that different panels of our Court have applied different standards of review where collateral estoppel is in issue. As in *Witkowski*, it is unnecessary for us to resolve this apparent

conflict. Applying the more exacting, plenary standard, we conclude that the District Court must be affirmed.

### III.

■ The Restatement (Second) of Judgments articulates the general rule of collateral estoppel, or in its terminology "issue preclusion," as follows: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Restatement (Second) of Judgments* § 27 (1980). We have consistently applied this general rule in determining the collateral effect of federal court judgments. In *Burlington Northern Railroad Co. v. Hyundai Merchant Marine*, 63 F.3d 1227 (3d Cir. 1995), for example, we held that the "prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action, (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" *Id.* at 1231–2 (quoting from *In re Graham*, 973 F.2d 1089, 1097 (3d Cir.1992)); *see also Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 474–75 (3d Cir.1997); *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir.1995).

■ This general rule is subject to a number of equitable exceptions designed to assure that the doctrine is applied in a manner that will serve the twin goals of fairness and efficient use of private and public litigation resources. The equitable factors to be considered in a particular case depend in part on (1) whether both parties to the subsequent suit were also parties to the first so that there is "mutuality of estoppel," *see Blonder–Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313, 328–29, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) and (2) whether the estoppel is being asserted (a) "offensively" by a plaintiff seeking to estop a defendant from relitigating issues which the defendant has previously litigated and lost, or (b) "defensively" by a defendant seeking to estop a plaintiff from relitigating an issue which the plaintiff has previously litigated and lost, *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). This is a case of offensive mutual estoppel. The relevant equitable factors to be considered in a case of mutual collateral estoppel are summarized in Section 28 of the Restatement Second.[3]

---

**3.** Section 28 provides:

§ 28. Exceptions to the General Rule of Issue Preclusion

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or

(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or

(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or

(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or

(5) There is a clear and convincing need for a new determination of the issue (a) be-

■ The PUC contends that (1) the issue in the 1997 proceeding was not the same as the issue asserted here; (2) the Eleventh Amendment issue was not actually determined in the first proceeding; (3) the determination in the first proceeding was not necessary to the judgment of the court; (4) all of the parties sought to be estopped here were not parties to the first proceeding; and (5) equitable considerations preclude application of collateral estoppel in this case. We examine each of these contentions in turn.

### 1. *The Identity of the Issues*

The PUC claims that the Eleventh Amendment immunity issue presented to the District Court in 1997 is not identical to the issue in the case at bar because "in the prior proceeding Amtrak[ ] claim[ed] that the PA PUC was barred from charging any fees to Amtrak pursuant to 49 U.S.C. § 24301(*l*) ..., and in the present proceeding Amtrak[ ] claim[s] that 49 U.S.C. § 29402(j) ... bars the PA PUC from ruling on safety issues involving Amtrak's property." [4] This argument misses the point. As noted in the Restatement, if the issues presented and determined in the two proceedings are the same, it does not matter whether they arise in the context of "the same or a different claim." Although it is true that the 1997 proceeding and the present proceeding involve claims predicated on different sections of the code, one issue considered by the court in both proceedings was whether the PUC was enti-

tled to assert Eleventh Amendment immunity when sued by Amtrak. The District Court fully considered and determined that issue in the 1997 proceeding.

### 2. *Actual Determination of the Relevant Issue*

An argument heading in the PUC's brief asserts that the "District Court's decision in [the] previous matter was not 'final, valid and on the merits.'" It does not contend, however, that the 1977 decisions denying the PUC's application to dissolve the injunction were not final ones or that the District Court lacked subject matter or personal jurisdiction to determine the matter of its own jurisdiction to enter the injunction. It does, however, contend that the District Court did not resolve the Eleventh Amendment issue in 1997 "on the merits"—its way of saying that this issue was not, in Restatement terminology, "actually determined."

The sole case cited in support of this argument by the PUC is *Frazier v. Southeastern Pennsylvania Transportation Authority,* 868 F.Supp. 757 (E.D.Pa.1994). In that case, SEPTA filed a preliminary objection in a state court proceeding seeking a dismissal on the theory that it was entitled to sovereign immunity. The plaintiff responded by arguing that under Pennsylvania pleading practices, sovereign immunity can only be raised as a defense in an answer and new matter, not by pre-

---

cause of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive

to obtain a full and fair adjudication in the initial action.

4. Both § 24301(*l*) and § 29402(j) grant Amtrak immunity from the application of certain state and local laws. Section 24301(*l*) exempts Amtrak from taxes and fees imposed by a State after September 30, 1981. Section 29402(j) exempts Amtrak from state or local building, zoning, subdivision, or other related laws.

liminary objection. Alternatively, the plaintiff argued that SEPTA was not entitled to sovereign immunity. The state court issued an order overruling SEPTA's preliminary objection without explanation. In a subsequent federal proceeding, the District Court refused to give the state court's order collateral effect because the order "contained neither a statement of the reasons for the decision nor a supplement providing an opinion explaining the rationale." *Id.* at 761. Thus, the District Court was unable to determine whether the state court reached the sovereign immunity issue or decided the motion before it on the procedural grounds asserted by the plaintiff.

The decision in *Frazier* is inapposite. Here there is no question that the District Court reached and determined the Eleventh Amendment issue in the 1997 proceeding. The District Court carefully considered and weighed each of the *Christy* factors in order to determine whether the PUC was entitled to Eleventh Amendment immunity and unambiguously determined that it was not.

### 3. *Essential to the Judgment*

The Restatement (Second) of Judgments explains in the following terms the rationale behind the requirement that the initial resolution of the relevant issue be essential to the judgment:

> [I]f issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an

appeal by the party against whom they were made. In these circumstances, the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.

Restatement (Second) of Judgments § 27, cmt. h; *see also O'Leary v. Liberty Mut. Ins. Co.,* 923 F.2d 1062 (3d Cir.1991).

█ Thus, in determining whether the issue was essential to the judgment, we must look to whether the issue "was critical to the judgment or merely dicta." *O'Leary,* 923 F.2d at 1067. In the 1997 decision, the District Court held that the PUC was not entitled to Eleventh Amendment immunity and this holding was necessary to the outcome of the proceeding. If the District Court had ruled differently on that issue, it would have dissolved the outstanding injunction. Its holding on the immunity issue was thus essential to its judgment denying the PUC's application and leaving the injunction in place.[5]

### 4. *Same Parties*

█ Only the PUC as an entity and not the commissioners were parties to the 1997 proceeding. The PUC, therefore, contends that collateral estoppel was improperly applied to the commissioners in this proceeding. This contention ignores the fact that the commissioners in their official capacity comprise the PUC and did participate in the 1997 decision. Accordingly, it was entirely appropriate for the District Court to apply collateral estoppel against them to the extent they rely upon their official status to support a claim of Eleventh Amendment immunity.[6] *See Tait v.*

---

**5.** Contrary to the PUC's insistence, the issue of whether Amtrak was entitled to modification of the injunction is simply unrelated to the issue of whether the District Court's rul-

ing on immunity was essential to the judgment denying relief to the PUC.

**6.** To the extent Amtrak is entitled to proceed against the commissioners in their individual

*Western Md. Ry. Co.,* 289 U.S. 620, 626–27, 53 S.Ct. 706, 77 L.Ed. 1405 (1933).

### 5. *Equitable Concerns*

Even when the requirements of the general rule of collateral estoppel are satisfied, the Court must consider whether there are special circumstances present which make it inequitable or inappropriate to foreclose relitigation of a previously determined issue. PUC contends that such special circumstances are present here. Specifically, it contends that relitigation is warranted (1) because the Eleventh Amendment immunity issue is an "unmixed question of law" and this suit involves a matter "unrelated" to that involved in the prior proceeding and (2) because relitigation is required "in order to take into account intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." Appellants' Brief pp. 32, 35 (quoting from Restatement (Second) of Judgments § 28(2)).[7]

### A. *Unmixed Question of Law*

In *United States v. Moser,* 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262 (1924), Moser, a retired Navy captain, had previously litigated before the Court of Claims his right to an enhanced pension under a statute providing for an enhancement for "serv[ice] during the Civil War." The Court, in applying the statute to his particular case, had given him credit for time spent as a Naval Academy cadet· during the Civil War. Subsequently, the Court of Claims changed its interpretation of the statute and Moser was forced to bring a new suit to secure continuing payment of an enhanced pension. The Court of

Claims held that collateral estoppel barred the government from relitigating Moser's right. The Supreme Court affirmed, observing in part:

> The contention of the Government seems to be that the doctrine of res judicata does not apply to questions of law; and, in a sense, that is true. It does not apply to unmixed questions of law. Where, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action upon a different demand are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases. But a *fact, question or right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law.

*Id.* at 242, 45 S.Ct. 66 (emphasis in original).

The Supreme Court last considered the *Moser* "unmixed question of law" exception to the general rule of issue preclusion in *United States v. Stauffer Chemical Co.,* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984). Stauffer litigated with the EPA in two suits involving different attempted inspections at two different plants the issue of whether a private contractor could be an "authorized representative" of the EPA within the meaning of the statute conferring the right to inspect. The EPA lost on this issue in the first proceeding and relied upon the "unmixed question of law" exception in support of its contention that it should not be precluded from relitigating the statutory interpretation issue in the second proceeding. The Supreme Court

---

capacities under *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the issue of Eleventh Amendment immunity does not arise.

7. *See supra,* p. 8 n. 3.

acknowledged that "the exception is generally recognized" but was "frank to admit uncertainty as to its application." It described the exception in the following terms:

> The exception seems to require a determination as to whether an "issue of fact" or an "issue of law" is sought to be relitigated and then a determination as to whether the "issue of law" arises in a successive case that is so unrelated to the prior case that relitigation of the issue is warranted. Yet we agree that, for the purpose of determining when to apply an estoppel, "[w]hen the claims in two separate actions between the same parties are the same or are closely related ... it is not ordinarily necessary to characterize an issue as one of fact or of law for purposes of issue preclusion.... In such a case, it is unfair to the winning party and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy, even if the issue is regarded as one of 'law'."

*Id.* at 171, 104 S.Ct. 575 (quoting Restatement (Second) of Judgments § 78, cmt. b). The Court refused to apply the exception, holding that "the doctrine of mutual collateral estoppel is applicable against the government to preclude relitigation of the same issue already litigated against the same party in another case involving virtually identical facts." *Id.* at 169, 104 S.Ct. 575.

More recently, we, too, recognized the continuing vitality of the "unmixed question of law" exception while acknowledging that its scope remains uncertain. *Burlington N.R.R.Co.*, 63 F.3d at 1236. We there declined to apply the exception and held that the general rule of preclusion governed in a situation involving two suits for indemnity brought against Burlington by different downstream carriers arising from two different shipments in which goods were damaged while allegedly in the possession of Burlington. In the first suit, Burlington asserted that the indemnity claim was barred by a provision in the carriage contract requiring that any suit be brought no later than one year after the date of delivery of the goods. The Court in the first suit held that despite this provision, the timeliness of suit was to be determined by the general rule of indemnity accrual—i.e., that an indemnity claim does not accrue until the indemnitee's liability is determined by judgment or payment. In the second carrier's suit for indemnity arising from a different damaged shipment, Burlington attempted to assert that the suit was untimely based upon a similar, "nine month from delivery" limitation in the carriage contract. We explained our refusal to apply the "unmixed question of law" exception as follows:

> While, as Burlington points out, the contractual limitations provisions in this case provides for a shorter period of time (nine months as opposed to one year), and applies to the presentation of "claims" as compared to the filing of "suits," these distinctions are of no legal significance to the issue decided in *Atlantic Mutual* and presented here. In both cases Burlington denied the indemnity claims on the grounds that they were untimely because the contract term limited liability to a period of time (commencing at the date of delivery) that had already run. Similarly, in both actions, the indemnity claimant sought recovery notwithstanding such provision on the grounds that any time limit for indemnity claims must commence when liability is determined or a cognizable loss is incurred. In sum, given these relevant similarities, we cannot conclude that the issue of law arising in this action is so unrelated to the *Atlantic Mutual* case

that relitigation of the issue is warranted.

*Id.* at 1237–38.

■■■ As our review of *Moser, Stauffer* and *Burlington* indicates, the "unmixed question of law" exception is not easily summarized. It is an equitable doctrine which, while recognizing that the court and the adverse party should ordinarily be spared the burden of relitigating an issue previously determined, nevertheless sounds a note of caution where the issue involved is the choice or formulation of the governing rule of law. Where the same legal issue is presented in two suits but the second suit calls for application of the previously selected rule of law in a significantly different context, it may be inappropriate to preclude a party from contending that the governing rule of law applied in the first was erroneously chosen or formulated. It is not necessary, however, that the "two cases ... must arise from the very same facts or transaction before an estoppel can be applied." *Stauffer Chem. Co.,* 464 U.S. at 172 n. 5, 104 S.Ct. 575. Indeed, estoppel should be applied unless "the 'issue of law' arises in a successive case that is so *unrelated* to the prior case that relitigation is warranted." *Burlington N. R.R. Co.,* 63 F.3d at 1237 (quoting from *Stauffer Chem. Co.,* 464 U.S. at 172 n. 5, 104 S.Ct. 575).

■■■ Whether the context in which the legal issue is presented in the second suit is sufficiently unrelated to that in the first to counsel against preclusion is a decision that should be made with reference to the consequences of preclusions for the precluded party and the administration of justice. A significantly different context, for example, may make it more likely that the second suit and the stake there at issue were not foreseen at the time of the first suit. Moreover, insistence on estoppel in a new context may in some situations unduly impede the development of the law. Such insistence may also impose an unfair competitive disadvantage on the party who is precluded from rearguing questions of law that would be open to challenge by other litigants. Finally, when the party to be precluded is a public agency responsible for administration of a governmental program, preclusion may impair its ability to regulate in a coherent manner. *See* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4425, at 244 (1981).

■■■ The District Court did not foreclose the PUC from challenging a legal precept. The PUC never sought to argue that *Christy v. Pennsylvania Turnpike Authority* did not provide the appropriate legal standard. Rather, it sought to argue that the District Court had erroneously applied that standard to the particular circumstances of the PUC at the time of the first suit at least in part because it did not have sufficient information about those particular circumstances. In support of its request for relitigation, the PUC submitted evidence of its particular circumstances which supplemented its submission in 1997. It did not, however, submit any evidence that its circumstances had changed since that time. The fact that the PUC may not have submitted all of the relevant evidence available to it in 1997, hardly justifies placing on Amtrak the burden of relitigating the application of the *Christy* legal principles to the unchanged circumstances of the PUC.

Moreover, while it is true that the two relevant proceedings here present distinct preemption issues, the issue as to which estoppel is sought does not arise in such a different context that the current situation implicates any of the concerns underlying the "unmixed question of law" doctrine. Amtrak and the PUC undoubtedly foresaw in 1997 that there would be repeated is-

sues of importance that could bring them before a federal court. Moreover, foreclosing the PUC from relitigating its Eleventh Amendment immunity issue with Amtrak will not impede the development of the law because the PUC will remain free to relitigate that issue with anyone else who hauls it into federal court. *See United States v. Mendoza*, 464 U.S. 154, 164, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) ("The application of an estoppel when the government is litigating the same issue with the same party avoids the problem of freezing the development of the law because the government is still free to litigate that issue in the future with some other party.") Nor is this a case in which insistence on estoppel will place the PUC at a competitive disadvantage or impair its ability to effectively regulate. The PUC is not being foreclosed from enforcing any regulatory rule against Amtrak that is enforceable against others. The sole effect of estoppel in this context will be to afford Amtrak access to the federal courts (that other utilities may conceivably be denied) unless and until the circumstances of the PUC materially change.

For these reasons, we decline to apply the "unmixed question of law" exception to the general rule of issue preclusion.

**B. *Intervening Change in the Legal Context and Avoidance of Inequitable Administration of the Law.***

 Under this argument heading, the PUC contends that the estoppel applied by the District Court is inequitable because (1) the PUC's Eleventh Amendment immunity has been previously recognized in other suits, (2) the PUC here tenders evidence not considered in the first proceeding, (3) the PUC had "no expectation that [the] determination [in the first proceeding] would forever bar its claim of sovereign immunity," and (4) estoppel here might "expose[it] to application of offensive non-mutual collateral estoppel."

None of the authorities cited by the PUC hold that it is entitled to Eleventh Amendment immunity.[8] Moreover, our conclusion here would be no different even if a court had previously so held in a suit to which Amtrak was not a party.

We believe that we have earlier explicitly or implicitly rejected each of the remaining contentions. The ability of the PUC to litigate its Eleventh Amendment immunity with parties other than Amtrak presents a materially different issue. *See*

---

**8.** The PUC argues that other courts in the Third Circuit have recognized its Eleventh Amendment immunity and thus the application of collateral estoppel is inappropriate. In making this argument, the PUC relies on three cases from this Court: *Bell Atlantic–Pennsylvania, Inc. v. Pennsylvania Public Utility Commission*, 273 F.3d 337, 2001 WL 1382537, Nos. 00–2619, 00–2620 (3d Cir. Nov. 2, 2001); *MCI Telecommunication Corp. v. Bell Atlantic–Pennsylvania*, 271 F.3d 491 (3d Cir.2001); and *Wheeling & Lake Erie Railway Co. v. Public Utility Commission of the Commonwealth of Pennsylvania*, 141 F.3d 88 (3d Cir.1998). These cases, however, do not support the PUC's argument.

In both *Bell–Atlantic* and *MCI*, which were consolidated for oral argument on the issue of Eleventh Amendment immunity, we assumed,

without deciding, that the PUC was an arm of the Commonwealth. However, we held that under the statutory scheme in question the PUC "knowingly waived its Eleventh Amendment immunity by voluntarily accepting the congressional gift or gratuity of the power to regulate local telecommunications competition under the Act." *MCI Telecommunication Corp.*, 271 F.3d at 513. Likewise in *Wheeling*, the court explicitly stated that the parties did not "dispute that the [PUC] is an arm of the Commonwealth of Pennsylvania protected by Eleventh Amendment principles of sovereign immunity." 141 F.3d at 91. Thus, this Court did not reach the question at issue here— whether or not the PUC is entitled to Eleventh Amendment immunity as an alter-ego or arm of Pennsylvania—in any of these cases.

*United States v. Mendoza, supra.*[9]

We perceive no inequity in the application of collateral estoppel in the context of this case.

## IV. Conclusion

The judgment of the District Court will be affirmed.

**9.** The PUC does not explicitly argue, nor could it persuasively maintain, that there has been an intervening change in the applicable legal context. Undoubtedly the Supreme Court has taken up the issue of Eleventh Amendment immunity with vigor since 1997. *See, e.g., Board of Tr. of Univ. of Al. v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank,* 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999); *Idaho v. Couer d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Seminole Tribe of Fla. v. Fla.,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). However, none of these cases addressed the issue in this case: the standard for determining whether a party is an arm of the state and thus entitled to the cloak of immunity. Rather these cases considered when Congress can abrogate Eleventh Amendment immunity and when a State can waive its immunity.